Good morning, Honors. Good morning. My name is Stephen Morley, and I represent the Commissioner Vlaslov-Kolkevich. I respectfully request three minutes of rebuttal time. That's granted. Thank you, Your Honor. Mr. Kolkevich came to the United States at the age of about 13 in 1994. Unfortunately, several years later, when he was of age over the age of about 18, 19, he got involved in some trouble of his own making, and he is currently still serving his state of Pennsylvania sentence. He got in quite a bit of trouble. And if we were here in a court of equity, we might have a little more problem, but we're here presenting specific legal issues. He's still currently serving his sentence in the state prison system of Pennsylvania. There's a significant jurisdictional question in this case, which the government raised in their brief and which I replied to in my rebuttal brief. So let's spend a little bit of time on the jurisdictional issue. The case here is that the BIA, in overturning the IJ, found that Mr. Kolkevich was a, quote, criminal alien, close quote, that he is not eligible. He was not eligible to file a petition for review. Is that correct? At the time, and this is pre-view ID. And the timing is very different in this case. The date of the decision of the BIA was March 21st, 2005. But he was eligible at that point to file habeas. Real ID comes into effect like May 11th of 2005. Right. And for those who were in limbo, like Mr. Kolkevich, did the Real ID Act explicitly give them any additional time to do something? No, it did not. It didn't deal with them at all. It didn't deal with them at all. He is in that time frame of people who were, could not have sought a petition for review to this court because he was barred. And by the time he could seek a petition for review, he would be on 30 days. Had he brought habeas, then under Bonametra, we would have, he would have been okay. Exactly. But there was no time limit for filing habeas. Precisely. There was no time limit. He could sit on that for as long as he wanted to, to gather his thoughts, to gather resources, financial resources, to gather, to say, well, I'm still sitting in state custody. I'm not even really at risk of being deported imminently because I'm still serving my state sentence. Now, this is a case of first impression. Yes, it is. How much time is left on the state sentence? Excuse me? How much time is left on the state sentence? I believe he's going to be released in about six months. And the question here is, if you know that the REAL ID Act cuts off something you thought existed, when did he first find out, or anybody on his behalf find out, that the REAL ID Act was going to affect negatively a right of habeas that he thought previously, or in fact, therefore, did exist? Probably May 12th of 2005. If that's the case, why did he wait 11 months to file a habeas? Because the one thing you know is you ain't got a whole lot of time any longer, and you shouldn't have done something within 30 days. I don't know that he needed to do anything within 30 days of that date. There's nothing magical about 30 days of the REAL ID Act. Well, there's something magical in that the REAL ID Act had a 30-day time requirement. Right. The REAL ID Act had a 30-day time requirement to... After the order for removal. Well, at that point, an individual could take a petition for review within 30 days. Right, right. But that's a petition for review from a BIA decision. He was 52 days or 42 days beyond that. Well, I guess the issue is if REAL ID here suspended the writ, in effect, had that impact, then don't we have to find a reasonable time within which he had to file a petition? I don't know that you do. I don't believe you do have to do that because short of the government coming forward and saying, we were prejudiced in some way because of delay, and there are cases in the criminal context where people have sat on their habeas for many years and the government comes forward and says we were tremendously prejudiced. Short of something of that nature, given the fact that he had an unlimited period of time to file habeas, and this Court has recognized that, has never applied that requirement under immigration habeas, that they permitted people to come many years later and filing their immigration habeas, then I don't believe this Court needs to be concerned with some kind of an equitable issue should he come forward sooner. Because how much sooner is soon enough? 11 months, 6 months, 3 months, 2 years? Unless the government can come forward and say, we are prejudiced in some way. That's not the case. He moved diligently ahead. I mean, there was a window that was closed, and he has the right to say, okay, wait a minute, you can't leave me without a remedy. The question is, how long can you keep the window open after the window purportedly has been closed by Congress? I don't think there's any time limit on that short of some showing of prejudice. Why would there be? Because Congress specifically took habeas away in passing the Real ID Act. So it said to us, no more extensive, unlimited filing time. It said that in Real ID. And when it said that, then we have to hear that. So we have to put some time limit. Why would we not do what we've done in AEDPA where we said, okay, we'll use a year from when AEDPA was passed? Because there has to be some time limit. And that's really what Real ID said to us, is that no more open floodgates 30 days from BIA. So why wouldn't we say, like we said in AEDPA, why wouldn't we say here, the reasonable time here for filing was 30 days from the passage of Real ID? Because I think in that context, Your Honor, the court, with all due respect, would be legislating. We'd be creating. No, we'd be doing what Congress said they wanted. They wanted to impose a time limit. Congress did not address the issue of what are they going to do. Actually, we'd be cutting your client a break by giving him an additional time. It's just that it's not an additional unlimited time. From my perspective, if you gave me, if you said a year from Real ID, then I'm in the window and I'm fine for my client. It's kind of working backwards. But the bottom line is, Congress didn't provide for this class of individuals. And unless this court announces perhaps a prospective rule so that people are on notice, you better get your habeas petitions in, it would be unfair to my client and perhaps other clients who have not yet gotten their habeas petitions in because they're still serving their state sentences and they're otherwise denied their right to have any form of judicial review. We would have difficulty if we construed it that way, that he's denied of every form of judicial review. But on the date that Real ID was passed, he no longer had habeas. He no longer had habeas and he couldn't appeal to this court. Well, but he could have filed habeas within 30 days arguing, listen, you've got to give me some remedy. I'm doing it within 30 days of the passage, which seems to me to be reasonable. You've got to give me at least this reasonable time. He had that opportunity. He had that opportunity, but nowhere in the act is that required. Congress simply left this as a whole. Why pick 30 days? Why pick a year? Nowhere in the act does he even get that. The point is, you're saying the courts are doing something. The courts are saying that somebody who previously had a remedy that is now foreclosed  When you look to what the Real ID Act did in an analogous situation, it allowed petitions for review up to 30 days. But why was he on notice to say, gee, I'll act within 30 days? Because he was on notice that he no longer had a right of habeas. He better do something real quick in hopes that a court will allow him an additional window. But he also had the Constitution. So the new habeas is not to be suspended. But we have held that if it is suspended, there must be another remedy, and that there must be a reasonable time within which to pursue. How do you come down as to what is reasonable? I believe that a reasonable time is any time that the court has put a person who has been in a window where he's been deprived of access to judicial review by the action of Congress, that a person is on notice as to when he must now fill in that gap. And to this court to now, after the fact, say, well, your reasonable window was 30 days, really effectively deprives him of his constitutional right to habeas. Although in the Scott opinion, which is an NPO, we did reason accordingly. We used the 30 days. I understand that. But Mr. Kulkovich had no notice that he was held to a 30-day standard by any review, and therefore he should be allowed to proceed with a habeas or a habeas that swept up to this court in terms of jurisdiction under Bono Metro. I have very little time left to address the merits, but let me briefly talk about the merits. Our concern with this case in terms of the merits is that the BIA really went back and refashioned the facts. If this court looks at the immigration judgment... They even said that they found, they fined, which is not what a review court does. Precisely, in doing so, their regulation, they have not deferred in the way that their regulations have instructed them to do so. They take issue with an expert witness that the immigration judge, in her opinion, said was compelling. They say this expert failed to substantiate his opinion, yet he was accepted as an expert. The trial attorney for the Immigration Service had a full range of cross-examination as the foundation of his opinions, and factually remained as an expert witness. But wasn't the problem, when you look at the credentials of Mr. Budkovich, his credentials have to do with anti-Semitism for Jews in the area, in Russia. But he had no expertise in the area of what happens to criminals when they come back in, and the detection. It seemed to me that that's where the BIA faulted him, was that the problem was that he was opining about the fact that he was going to be picked up at the airport and he'd be detected, whereas they didn't think that was valid, and if that's not valid, then you have basically no Semitic person, no Jew can go back to Russia. Unfortunately, that's the way the BIA construed the record in this case. They took this case and said, this is a chain of events type of case, like JFF, and say you need to have each, you have to have substantial evidence or clear evidence as to each element, and each link in the chain, if you don't have that, you don't have the case. This was not a chain of events case. This was a confluence of factors case. And what the expert really said was, number one, it is likely that local police, he's not necessarily going to be picked up at the airport. His fear was that my client one day would be somewhere in society, and that he'd be very likely picked up by local police. Why would he be targeted by local police? One, he looks Semitic. Two, he has a Semitic-sounding name, so there's the anti-Semitism element. Three, they'd investigate him. They'd find his Chechen background. That would be a problem. Four, it is likely that his criminal deportee background would be discovered. What expertise did he have for that? His expertise is in studying anti-Semitism in the former Soviet Union. By necessity, one is studying the institutions and the government and the structure of government in Russia. What he said was, the local police are likely to find out why, because that's the way the bureaucracy works. If he studies anti-Semitism, and I think that's pretty much a direct quote from his, he's going to find that linkage through the Bureau. They're going to find out about him. And finally, because there's no supports, he's going to be swept up into being abused and forced confessions and things like that. And even the State Department reports highlight the fact that local police frequently beat and torture particularly dark-skinned individuals. So the crux of his analysis is really supported not only by his opinion, but by the State Department reports. And finally, the problem with the BIA opinion is they've completely twisted the record in this case. If you read the record, if you read the IJ's opinion, it's not what the BIA pointed it out to be. They reworked it in some way that a, as your Honor said, a reviewing court should not do. Thank you. We'll hear from you on rebuttal. Is this okay? It is okay. May it please the Court. My name is Judge Nigar, Judge Randell, Judge Ambrose. My name is Richard Bernstein. I'm an assistant United States attorney, and I represent the government in this matter. Your Honor, I'd like to address the jurisdictional issue because it's clear that the Court has, as I respectfully say. What should the remedy be in a case like this? The remedy, I think in the Scott decision, and I acknowledge it's a non-precedentialist opinion, Your Honor, found that the REAL ID Act drew a very bright line and that as to habeas petitions pending on the date on which the REAL ID Act became effective, May 11, 2005, they could be transferred to the Third Circuit or transferred to the Appropriate Court of Appeals and be converted into a petition for review. That was as to habeas pending? Pending. As of the effective date of REAL ID. Here we have a different fact pattern. As we do in Scott, Your Honor. With all due respect, I would like to point out that in Scott, the situation was as follows. The BIA opinion was rendered on April 15, 2005. He had three days within which to file a petition for review. He didn't at the time that it was handed down because REAL ID hadn't happened. A petition for review, Your Honor, I'm talking about. He had under the law prior to REAL ID and it remains the same. There were 30 days. He could have filed, that's right. So April 15, he had 30 days, which spilled over the effective date of the REAL ID Act. And the 15th was a Sunday, so he really had to the 16th of May, 2005. He did not file a petition for review, notwithstanding that he had a five-day period within which to do so. Wait for just a minute, please. Now, approximately two weeks later, he filed a petition for a writ of appease court. That was May 24, 2005, well within the 30 days which was part of the discussion with Mr. Morley a few minutes ago.  That was granted and that was sustained per curiam, albeit non-presidentially. In a 28-J letter which I wrote to the court last week, I called the court's attention respectfully to a Seventh Circuit opinion, which in dicta said much the same thing. A habeas petition pending as of the date of REAL ID could be transferred to the Court of Appeals and be deemed a timely petition for review, notwithstanding that the BIA's opinion might have even been years ago. But at that point, the door is shut, the window is closed, and that's the end. It's a bright line. It leaves Mr. Kulpovich admittedly in a difficult position, but Congress has so mandated. And I don't think that the REAL ID Act leaves any room for a kind of a reasonableness or some sort of equitable call out. Well, then the REAL ID Act, as applied to him, has suspended the writ if he has no remedy, and it is unconstitutional. He has to be permitted to file habeas, doesn't he? He had two procedural options, Your Honor, for a brief period of time. And I don't wish to be understood to minimize the difficulty that he's in. He got caught in a tough position, but he had two procedural opportunities, two vehicles. One was to file a habeas petition sometime between March 25, 2005 and May 11, 2005. He did not do that. And the second, and it would have required, I think, the creativity of counsel to bring this about. But he had no obligation from a time standpoint to do that. I don't dispute that, Your Honor. And in fact, to REAL ID, sometimes habeas petitions appear years after the REAL ID, and you know we're sustained. I mean, but don't we have to talk about what his options were, and did he have any, as of the date of passage of REAL ID that took away habeas? He had none. He had none. He had none. That's correct, Your Honor. Had he filed? Maybe address the constitutional aspect of that. Well, I think the Court in Scott has done that, and again, albeit non-presidentially, it hasn't addressed the constitutional issue, but it has sustained a dismissal of a habeas petition. But there he had an opportunity. He had four days. He had a window. It was a tiny window. Maybe that's why it was non-presidential, because they weren't sure how small a window they should give. They didn't want to touch the constitutional issue. But here, he's got no window at all, and that writ is suspended. That is correct, Your Honor. I'm surprised that you don't try to analogize it to the EdPub situation. If I may, Your Honor, I was somewhat, with all due respect, somewhat perplexed by your comment that there was some time. I think the way EdPub came about, the way the law developed is that the government initially read 440D of what I would call the DIPA to have suspended the root of habeas corpus. And that was a vigorously contested issue in the Court of Appeals, among others, by Mr. Morley in the landmark case of Sandoval in this circuit. And what the court held in Sandoval was that, indeed, the root of habeas corpus had not been suspended and that the right still existed. A, well, I was going to say in the Sancerre case, but that really took off on ERIRA. I have not understood that act to have created some kind of a, I forget what Your Honor said, a one-year period. After the passage. Yeah, but I think the issue was whether habeas had been suspended at all and Sandoval established that it had not. Although the statute was wrong. And I'm now hesitating a little bit. That was a case where proceedings had been commenced prior to April 24, 1996. Right. Yeah, I think so. Right. I confess I'm a little bit. I'll go back and look at it again. I just thought maybe it was analogous. Maybe we can turn to the merits. Sure. The problem that I have is the BIA, if you get to the merits, really did appear to substitute its own view of the record. I mean, now, they didn't even send it back to the IJ. The IJ ruled in favor of this young man. And the BIA then says, among other things, we find. That's a no-can-do. The BIA cannot find anything. And it didn't even mention its standard of review. It didn't even mention its standard of review. That's correct, Your Honor. But I think what they, in essence, I think it's implicit in what they said was they found, in effect, that the finding was clearly erroneous, that it was based on a chain of assumptions. They can do that, and they can send it back. But you can't go then and make your own finding, can you? I don't respectfully disagree that they made findings, what they hold. There's a whole place in here where they specifically said, we find, and I don't have it right in front of me. But, you know, if we can't do it, they can't do it, as a court of appellate review. But it seems to me, Your Honor, that the relationship, following the change in standard of review in, I think, late 2003, from de novo to clearly erroneous. I'm looking, actually, at the beginning of the opinion. It's the second paragraph. The issue in this appeal is whether the immigration judge correctly found the evidence of review supported the finding that it's more likely not the respondent will be tortured and rushed by the police, etc., etc. We have reviewed the documentary evidence of record, as well as the testimony of the respondent's expert witness, and find that the evidence does not meet the stringent standard. By the way, the stringent standard is preponderance of the evidence, so I'm not quite sure what he meant by that, or they meant by that. But you can't do that. May I comment on that, Your Honor? You sure can. I think the stringency of the evidence is the requirement that if the case is based on this... On a stringent standard. Well, there's an amalgam of factors that the following things are likely to happen, 1, 2, 3, and 4, and they come together in some constellation, that there has to be evidence more likely than not for each link in the chain. I think that's what they mean by stringency. But they never then addressed that there was the I.J. saying, look, there's this link, there's that link, there's the other link. And the combination of the links leads me to believe that this person would be persecuted. There's a chance that he, a reasonable likelihood that he will be persecuted if he said that. Now, you can disagree with that, and maybe that's an opinion that wouldn't stand up in the end. But for the BIA to find differently on facts and not take into account the, what I call, the usual word, amalgam argument that all of these things put together weigh in his favor, not just them by themselves, makes the opinion of the BIA a little bit tough to defend. If I may respond, Your Honor. It strikes me that what is the relationship of the BIA to the immigration court post the change in the standard of review to clearly erroneous is much like the relationship of this court to a district court under Rule 52 of the Federal Rules of Civil Procedure. And that the Court of Appeals will reverse if it has, under the Supreme Court case, I think it's Anderson v. City of Bessemer or Anderson v. something like that, if it has a firm conviction that a mistake has been made. I wonder if, perhaps, if the court had said, instead of find, it had said held, whether that would have made a difference. I think what the court is saying, excuse me, what the BIA is saying, in its opinion, is that it is firmly convinced that an error has been made because there is insufficient showing. How about the next page? So we also find that the record is erroneous. It's not supportive of finding. I mean, sure. But, Your Honor, if a case comes up to this court under Rule 52 of the Federal Rules of Civil Procedure, and the task of the court is to determine whether the findings of the district court are clearly erroneous, does not the court look at the record and, in essence, make findings? It has to determine whether the evidence sufficiently supports the findings such that the district court should be affirmed or, alternatively, if it's convinced firmly that a mistake has been made, it finds them to be clearly erroneous. I think the... That's the way you should do it. Yes. Now, I think the problem with the BIA's opinion is, A, and I can see the point readily, Your Honor, is that it should have articulated the standard of review and made clear that that's what it's doing. I think it did it. It did it impliedly. I don't disagree with Your Honor that it could have done it better. I see that my time is almost up. There was a point I wanted to return to on a jurisdictional issue, and that, again, is the Damien case in the Seventh Circuit, which, albeit in dicta, what happened there is there was a habeas petition pending as of the effective date of the Real ID Act turned into a petition for review in the court. So, well, that's fine. And then there's this transitional rule in the Real ID Act that provides that it would be deemed timely, notwithstanding that the BIA decision may have been rendered years ago. But then it says, in dicta, but at this point, the door is closed. Now, it doesn't articulate a view as to the constitutional issue, but you have that and the Scott opinion in this circuit. At least two appellate panels have looked at the issue and have found that those petitions were untimely. Are you aware of the Monroy v. Gonzales case pending in the Ninth Circuit? Pending in the Ninth Circuit, Your Honor? I am not. The ACLU there is arguing the court should hold that the 30-day deadline runs from the date on which aliens removable on the basis of a criminal conviction became eligible to file petitions for review. That is the date when Real ID took effect. And that they have a reasonable time, which would arguably be within 30 days. Forgive me. You're not aware of that? It makes the argument that I think I was saying earlier, that with this type of situation, you remedy the otherwise suspension of the writ by finding a 30-day time period from Real ID. My time is up, but let me just say that I do not believe that the statute permits that kind of rule to be carved out, which admittedly presents squealing the constitutional issue. But let me just say, as a result, because it's unconstitutional as to him, we should permit his habeas petition to be filed and to stand as is, correct? I disagree, Your Honor. That's precisely the point, that it's too late. And, Your Honor, the court would have to find that, to the extent that that is what Real ID requires, the court would have to find that that's unconstitutional. I think it's clear. Yeah, and it's unconstitutional, so? So what? So isn't his habeas petition okay? Well, if that's the way the court rules, sure. All right, thank you. Sure, Your Honor. Thank you. What would be the constitutional analysis that you would say that habeas could be taken away here and there is not a constitutional problem? I really didn't understand your answer to that earlier. I mean, if habeas has been taken away, so I merger Real ID, and he has no remedy, that is unconstitutional, and we have to let his habeas petition stand. And what would be your argument to the contrary? My argument to the contrary is twofold. That he had an opportunity between March 24th or March 25th, 2005, and May 11th to pursue a habeas remedy and did not do so. And number two, at least two appellate panels have looked at the issue and dismissed, albeit without explicitly addressing the constitutional issue. But what's the constitutional argument? Your point is he had an opportunity, keeping in mind that as of the opportunity that existed as of May 10 was technically unlimited. And no one, as a practical matter, files a habeas within two months after an adverse decision. I mean, I don't know of anyone who's ever done it. Except for Mrs. Scott. And the question isn't whether he had an opportunity before Real ID. The issue is that Real ID took away a right that he had at that moment that was unfettered. But my question to you is, forgetting the fact that you think he had another opportunity, and putting aside that there are some not-presidential decisions of our court that have somewhat dealt with it in a case in which somebody did that four days, and that looks to me like they took 15 steps back and put it, what is the constitutional argument that what was done here by taking away any window for him is okay? I can't answer that question, Your Honor. I can't answer that question. I don't know that there isn't an answer, but I'm not prepared to provide one. Thank you. Thank you. Mr. Morley? I would like to just briefly mention a couple of quick points. It's significant to take a look at the merits. It's significant to take a look at the JFF case, the one that the BIA used to discuss chain of evidence, because there really was a situation where if you follow each piece of evidence, if he doesn't make the link, he has no claim. It's an individual who needs medication. If he doesn't get the medication, he's going to get a rowdy. If he gets a rowdy, he's going to get into police custody. I mean, it goes down every piece, and there simply was not evidence to support those kind of hypothetical, conjecturous statements that the theory of the case was made on. This is a very different case. One of the problems that this court is faced with here and other times at the BIA is the ineptitude of the opinion in terms of discussing the case, and number two, what they did really is twist this case. They took what was a confluence of factors and said, oh, well, he didn't establish every element by preponderance of the evidence. Therefore, he loses. That's not this case. So I think the court was well taken to look at the standard of review, using that, and also apply the standard that this court can look at from the Toussaint case, which talks about that administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. That is the standard this court can look to, and in this case, if you look at Judge Dufresne's record at the IJ level, it supports that because if you look at what she looked at, which was the case in front of her, not the hypothetical case that the BIA created, you have a very, very compelling case of somebody who's going to be tortured once he gets to Russia, not grabbed off the plane, as some of those other cases have written, the Nigerian case, the Haitian case. Those are different situations. Secondly, with the BIA, when the Attorney General had the regulations rewritten to allow for deferral to the IJ's decisions in September of 2002, the idea was to streamline decisions. That is, instead of the BIA doing its job as de novo review, the Attorney General sought an opportunity to have these decisions move forward much faster. Most cases are cases where the alien loses before the IJ, and therefore the BIA can simply say, IJ found against you, you lose, we're done. This is one of those cases where the alien won, and basically two members of the BIA, and it was a two-to-one decision, two members of the BIA simply didn't like it and redetermined the facts. And that's my major problem with the factual elements of this case, the merits of this case. And as to the jurisdictional question, Your Honor, I see my red light is on. I think the Court has our positions quite clearly. Thank you. Thank you. Thank you. The case was well-argued. We'll take another question. Thank you.